## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2020, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Joshua E. Leicht
Leicht Law Office
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

K.N.S.,

*Appellant,*

v.

J.C.,

*Appellee.*

February 18, 2020

Court of Appeals Case No.
19A-DC-2112

Appeal from the Howard Superior
Court

The Honorable Hans S. Pate,
Judge

Trial Court Cause No.
34D04-1803-DC-175

**Bailey, Judge.**

# Case Summary

The marriage of K.N.S. ("Mother") and J.C. ("Father") was dissolved in the Howard Superior Court and the trial court entered an order dividing the marital property and awarding Mother custody of, and child support for, their three children. Mother's motions to correct error were, apart from the correction of mathematical and scrivener error, denied. Mother now appeals the dissolution order with regard to property distribution and child support. We affirm in part, reverse in part, and remand with instructions to the trial court to distribute the marital property in accordance with Indiana Code Section 31-15-7-4, upon consideration of the factors of Indiana Code Section 31-15-7-5, and to revise the child support order consistent with this opinion.

# Issues

Mother presents two issues for review:

I.  Whether the property distribution order, allocating to Father virtually all the marital property and leaving Mother the entirety of the marital debt, is an abuse of discretion; and

II. Whether the child support order, based upon potential income attributed to each parent, absent consideration of childcare expenses, giving Father credit for ninety-eight overnight visits, and not made retroactive to the date of the petition for child support, is an abuse of discretion.

# Facts and Procedural History

[3]     Father, who was facing six criminal charges related to his alleged conduct toward Mother, did not appear at the final hearing or offer evidence; he was represented by counsel who presented argument. Accordingly, our recitation of the relevant facts and procedural history is derived from our review of the pleadings, the testimony of Mother (who was the sole witness at the final hearing), and a property tax document admitted into evidence, related to the principal marital asset.

[4]     In 2009, the parties began cohabitating and Mother gave birth to their eldest child. They were married on June 25, 2011, and had two more children, born in 2012 and 2016. They separated on November 29, 2017, after Father allegedly committed felony battery upon Mother. Father, who had operated a welding business next door to the marital residence, ceased to do so. Mother, who had been employed as a manager at Wendy's working forty to fifty hours per week, left that position in December of 2017.

[5]     On March 9, 2018, Mother petitioned to dissolve the marriage; she sought custody of the children and an order for child support. In her pro se petition, Mother advised the trial court that there were at that time three related legal proceedings, with Father having been charged with one count of battery upon Mother and two counts of invasion of privacy for violating a protective order.

[6]     On May 9, 2018, the trial court conducted a provisional hearing. On May 14, 2018, the trial court ordered that Mother have legal and physical custody of the

children and that Father pay child support in the amount of $74.00, "beginning on Friday, May 18, 2018." (App. Vol. II, pg. 27.) The child support calculation was based upon attributions of potential income:

> The father operates a welding business. He is capable of earning at least $500.00 per week.

> The mother had a job which she voluntarily left. When she was employed she earned $516.00 per week. The mother is not seeking employment. The court finds that the mother is voluntarily under employed and she is capable of earning $516.00 per week.

*Id.* On the following day, Mother (by counsel) filed a motion to correct error. Mother requested that the child support order be made retroactive to the date of her motion for a provisional order. She also challenged the omission of any childcare costs in the imputation of income and advised that childcare costs for the youngest, then aged one, would exceed $100.00 per week. On July 24, 2018, the trial court issued an order clarifying the location of the marital residence but denying the request for modification of the child support order.

[7] On May 14, 2019, the trial court conducted a final hearing, at which Mother, her counsel, and Father's counsel were present. At the outset, Father's counsel advised the trial court that he had texted his client to remind him of the hearing date and Father had responded "thanks." (Tr. Vol. II, pg. 3.) Counsel acquiesced to proceeding with the hearing without Father present.

[8]    Mother testified to the following as to Father's criminal charges. By the time of the final hearing, Father had amassed three additional criminal charges related to his conduct against mother, for a total of six charges. Mother had also reported to police two incidents of property damage by Father. Mother had borrowed her grandmother's vehicle, and Father "kicked the driver's door" while she "was trying to get away" and "punched the windshield with his bare fist." *Id.* at 18. This resulted in approximately $3,500.00 of damages. Mother had rented a Malibu from Enterprise Rent-a-Car, but Father "took a hammer to it, busted out the front windshield, the back windshield, the side mirrors," dented the hood and "ripped off" the rearview mirror and windshield wiper and turn signal handles. *Id.* at 19. Enterprise Rent-a-Car was billing Mother for approximately $5,000.00 in damages. Mother was uncertain if new criminal charges had been filed against Father based upon her reports of these events.

[9]    As for Mother's economic circumstances, she testified that she and the children were living with her grandmother and received food stamps. She had been unable to continue in her fast-food management position because she needed evening childcare and could no longer rely on Father. Mother had no vehicle and was fearful of Father's conduct in her workplace. She had received no regular child support payment from Father but had been able to obtain proceeds from the release of a criminal bond, in the amount of $1,250.00. Mother did not know if or where Father was working. As to parenting time, Father had exercised parenting time with the children sporadically and had kept them overnight on a few recent occasions.

[10]     Regarding the marital property and debts, Mother testified as follows. Electrical service at the marital residence had been shut off and could be restored only upon replacement of a meter and payment of $1,000.00. Father had caused approximately $8,500.00 in damages to two vehicles. He had also caused a debt to Aaron's Furniture Rental in the approximate amount of $2,500.00 when he slit the living room furniture and lampshades with a knife and poured honey and syrup on them.

[11]     Father had possession of the sole marital property vehicle, which was possibly inoperable. Mother disclaimed an interest in the vehicle, and in welding equipment and tools that had disappeared from a pole barn.[1] Mother proposed that she leave Father all household furniture that had belonged to his mother, and the stove, microwave, and refrigerator; she would take the washer and dryer. The primary marital asset was the marital residence, which Father's uncle had deeded to Father on April 10, 2015, at no cost. At the time of the dissolution petition, the property had an assessed tax value of $108,000.00 and there was no mortgage lien against the property.

[12]     When Mother's testimony concluded, the trial court heard argument of counsel and took the issues under advisement. On the following day, Mother filed a motion to correct error. Purportedly, Mother's counsel had examined child

---

[1] Mother's attorney expressed his belief that Father had admitted, in prior proceedings, that he had broken into the pole barn and removed items. Mother testified to her belief that Father had given some of the welding equipment away.

support forms previously utilized by the trial court and discovered that the $72.00 child support award was based upon the amount for two children, as opposed to three children. Also, Father had been given credit for ninety-eight overnights with the children, as contemplated by the Indiana Parenting Time Guidelines and Indiana Child Support Guidelines. Mother asked the trial court to correct the mathematical error in the final decree, and also asked that Father not be given credit for irregular overnight visits.

[13]    On June 12, 2019, the trial court issued an order dissolving the marriage, granting Mother permanent legal and physical custody of the children, and ordering Father to pay $92.00 weekly in child support. Father was awarded the marital residence and its contents, except for the washer and dryer. The trial court refused to allocate marital debt, on grounds that Mother had provided no written documentation. Father was found to be in contempt of court for failure to pay child support and he was ordered to pay $4,000.00 of Mother's attorney's fees and $3,810.00 in child support arrearage.[2]

[14]    On July 12, 2019, Mother filed a motion to correct error, alleging: the property division was unconscionable; the trial court had relied upon stale testimony from the provisional hearing to attribute income to her; there had been a miscalculation in child support; and the trial court had ignored Father's

---

[2] The Appendix contains a page titled "Arrears Calculation" and indicates that the arrearage was calculated by multiplying $92.00 by fifty-five weeks and giving credit to Father for $1,250.00 (consistent with the amount recovered from the release of bond monies). (App. Vol. II, pg. 52.)

dissipation of marital assets. The trial court denied Mother's motion to correct error. She now appeals.

# Discussion and Decision

## Standard of Review

Mother appeals after the denial of a motion to correct error. Generally, a ruling on a motion to correct error is reviewed for an abuse of discretion. *Poiry v. City of New Haven*, 113 N.E.3d 1236, 1239 (Ind. Ct. App. 2018). An abuse of the trial court's discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court or the court has misinterpreted the law. However, when issues raised in a motion to correct error present a question of law, our review is de novo. *Id.*

## Property Division

The parties owned real property worth $108,000.00 and some household furnishings. The unpaid debts incurred during the marriage consisted of $1,000.00 for electricity, $2,500.00 to Aaron's Furniture Rental, $3,500.00 for costs of repairing a vehicle; and $5,000.00 to Enterprise Rent-a-Car. The trial court divided the marital estate by awarding Mother the washer and dryer; the real property and all other furnishings were awarded to Father. As for the debt, Father had no obligation imposed upon him. Mother contends this constitutes an abuse of discretion.

[17]     A trial court has broad discretion in dividing the marital estate, and we will reverse a trial court's decision only for an abuse of discretion. *Goodman v. Goodman*, 94 N.E.3d 733, 742 (Ind. Ct. App. 2018), *trans. denied*. We do not reweigh the evidence or judge the credibility of witnesses, and we consider only the evidence most favorable to the decision of the trial court. *Harrison v. Harrison*, 88 N.E.3d 232, 234 (Ind. Ct. App. 2017), *trans. denied*. The party challenging the trial court's property division must overcome a strong presumption that the court complied with the relevant statutory guidelines. *Id.*

[18]     Indiana Code Section 31-15-7-4 requires the dissolution court to divide the property of the parties "in a just and reasonable manner." The property to be divided includes property (1) owned by either spouse before the marriage, (2) acquired by either spouse in his or her own right after the marriage and before final separation, or (3) acquired by their joint efforts. *Id.* The division of marital property involves a two-step process; that is, first the trial court must ascertain what property is to be included in the marital estate and second, the trial court must fashion a just and reasonable division of the marital estate. *Goodman*, 94 N.E.3d at 742.

[19]     The marital pot to be divided includes both the assets and the liabilities of the parties. *Crider v. Crider*, 26 N.E.3d 1045, 1049 (Ind. Ct. App. 2015). "The systematic exclusion of any marital asset from the marital pot is erroneous." *Harrison*, 88 N.E.3d at 235.

[20] There exists a presumption that the property in the marital pot is to be divided equally. Indiana Code Section 31-15-7-5 provides:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
>     (A) before the marriage; or
>
>     (B) through inheritance or gift.
>
> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.
>
> (4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.
>
> (5) The earnings or earning ability of the parties as related to:
>
>     (A) a final division of property; and

(B)  A final determination of the property rights of the parties.

Fault is not relevant in dissolution proceedings, except fault related to the disposition or dissipation of marital assets. *Goodman*, 94 N.E.3d at 743. The trial court may consider such factors as (1) whether an expenditure benefited the marriage; (2) timing of the transaction; (3) whether an expenditure was excessive or *de minimis*; and (4) whether the alleged dissipating party intended to hide, deplete, or divert the marital asset. *Id.*

Here, the portion of the dissolution decree related to property division provided in its entirety:

> The wife testified as to damage to vehicles and property caused by the father; however, [she] provided no written proof or estimates as to damage amounts for the Court to consider.

> Father is awarded the property located at 2401 S. Dixon Road subject to the payment and maintenance of said property. The Court finds that the property was a gift from Father's family. Mother is awarded the washer and dryer inside the residence and may have immediate possession of those items as well as her personal property.

(App. Vol. II, pg. 11.)

Without articulating a finding that the evidence supported a deviation from the statutory presumptive 50/50 split, the trial court allocated to Father more than 99% of the marital property and refused to assign him any marital debt. There is no indication that the trial court engaged in the two-step process of

ascertaining what property was includable in the marital pot and then dividing the property in a just and reasonable manner. It appears that the trial court focused solely upon evidence that the marital residence had been a "gift." At the hearing, Mother testified that Father's uncle had deeded the property to Father and counsel argued as to whether Father's uncle had intended a gift solely to Father or a gift to Father and his family. Regardless, the uncle's intention at the time he made a gift is not dispositive. The real property was acquired "after the marriage and before final separation" and thus is a marital asset pursuant to Indiana Code Section 31-15-7-4. Its origin as a "gift" was but one of the statutory factors for consideration by the trial court.

[24] In addition, there is no oral or written language from the trial court suggesting consideration of such factors as respective economic circumstances or dissipation of assets. This is so despite the uncontroverted testimony that Father left his children and Mother in dire circumstances after he: battered Mother, systematically destroyed property, disposed of property, ceased operating his welding business, refused to pay child support, deprived Mother of a means of transportation, and repeatedly ignored protective orders. Moreover, the trial court refused to allocate any marital debt to Father, wholly disregarding Mother's uncontroverted testimony and demanding – without basis in law – documentary evidence. The cursory disposition of virtually all the marital assets to Father, coupled with a refusal to hold him accountable for any marital debt, constitutes an abuse of discretion.

# Child Support Order

[25] The trial court ordered Father to pay $92.00 per week for the support of his three children. In calculating this to be an appropriate amount of support under the Indiana Child Support Guidelines ("the Guidelines"), the trial court attributed roughly proportional potential incomes to Mother and Father ($516.00 and $500.00, respectively) and gave Father credit for ninety-eight overnights per year. Mother contends that the trial court abused its discretion because the evidence supported a lesser potential income on her part and a lesser or no credit to Father. Mother also contends that the award of child support should have been made retroactive to the date of her filing for child support. She argues that the trial court's decision to use the date of its order as the beginning of Father's support obligation, after he requested a continuance, granted Father a windfall and deprived the children of support due them.

[26] The amount of child support, including retroactive support, is to be determined in light of the circumstances of each case. *Matter of Paternity of A.J.R.*, 702 N.E.2d 355, 361 (Ind. Ct. App. 1998). Decisions regarding child support rest within the sound discretion of the trial court and we reverse its determination only if the trial court abused its discretion or made a determination that is contrary to law. *Taylor v. Taylor*, 42 N.E.3d 981, 986 (Ind. Ct. App. 2015), *trans. denied*. We consider only the evidence and reasonable inferences favorable to the judgment, but "will not blindly adhere to the computation of support" when careful review is necessary to do justice. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006).

[27]     Under the Guidelines, parental income available for child support is broadly defined to include potential income. For purposes of child support, "weekly gross income" is defined as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based on 'in-kind' benefits." Ind. Child Support Guideline 3(A)(1). Child support awards under the Guidelines are designed to provide the children as closely as possible with the same standard of living they would have enjoyed had the marriage not been dissolved. *Payton*, 847 N.E.2d at 253. Here, the computation of income for child support was particularly challenging, with no evidence of actual earnings by either parent.

[28]     Father did not appear at the final hearing, and there was no testimony or documentation of his past earnings or his potential income as a welder in the surrounding community. Neither Mother nor Father's counsel presented a challenge to the attribution of $500.00 per week to Father as potential income, that is, Mother did not suggest an increase and Father's counsel did not suggest a decrease. Mother suggested that the federal minimum wage for full-time work, $290.00 per week, be attributed to her. Although Mother testified that she had once earned $516.00 per week, she maintained that she could not continue to do so in her current circumstances. Indeed, one could not reasonably infer from the evidence of record that Mother, a custodial parent of three young children, could maintain her peak earnings by working evening shifts without childcare or an operable vehicle.

[29] Parenting time credit is not mandatory; it may be awarded in recognition that overnight visits with the noncustodial parent who provides such things as meals and transportation may alter some of the financial burden of the parents. *Bogner v. Bogner*, 29 N.E.3d 733, 743 (Ind. 2015). It logically follows that credit should not be given when visits are occurring so infrequently that the alteration of the respective financial positions is de minimis. Mother testified that Father had sporadically exercised parenting time with the children; he had them overnight on a few occasions after the marital separation. Father did not testify or proffer another witness regarding his past conduct or future intentions; he was facing multiple criminal charges. Thus, there is a dearth of evidence suggesting that he was or would be willing and able to exercise overnight parenting time with the children on an ongoing basis. The credit for ninety-eight overnights was contrary to the facts and circumstances before the trial court.

[30] Finally, we are persuaded that the trial court abused its discretion by refusing Mother's request that the modest award of child support be retroactive to the date that she requested a provisional order of support. Father requested a continuance but provided no basis upon which the trial court could conclude that he should not be required to contribute anything to the support of his three children for a two-month period of time.

# Conclusion

We reverse the property distribution order and remand with instructions to the trial court to divide the marital pot, inclusive of assets and liabilities, in accordance with statutory authority providing for a just and reasonable disposition and a presumptive 50/50 split. We direct the trial court to consider, and enter appropriate findings, as to whether credit should be given to Mother for Father's dissipation of marital assets. We also instruct the trial court to recalculate Father's child support obligation, retroactive to the date of the filing for child support, reducing the potential income attributed to Mother to reflect the evidence presented as to her circumstances, and eliminating the credit to Father for overnight visits.

Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Mathias, J., concur.